IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR842-6 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| GARY KOULETAS, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S SENTENCING |
| Defendant. | ) | MEMORANDUM |

The United States of America, by and through its undersigned counsel, and submits the

following memorandum in response to Defendant's sentencing memorandum in this case. Unlike

Defendant's request for a sentence below the range suggested by the Guidelines had he accepted

responsibility and not obstructed justice, the government requests a within-Guidelines sentence.

**SENTENCING MEMORANDUM**

**I.      SUMMARY OF THE CASE**

On December 17, 2020, the Grand Jury returned an Indictment against Defendant Gary

Kouletas charging him in Count 1 with conspiring to violate federal securities laws, a violation

of Title 18, United States Code, Section 371. (R. 21: Indictment). On August 26, 2022, the Court

held a bond violation hearing after the government informed pretrial services that it recently

obtained evidence that Defendant had violated a condition of his bond—specifically that

Kouletas continued to broker stock sales for third-parties in violation of his bond conditions. (R. 344: Final Presentence Report ("PSR") at ¶¶ 8-9, PageID 2445). The Court found that Defendant violated the terms of his pretrial release and ordered that Kouletas be placed on home detention with electronic monitoring. (*Id*. at ¶ 9). On August 30, 2022, Defendant Gary Kouletas pleaded guilty by virtue of a signed plea agreement with the United States of America. (Doc. 294, Plea Agreement).

As part of the plea agreement, Defendant agreed to pay restitution to the victims of his crimes. (*See* Doc. 294 at ¶ 23, PageID 1914). Based on the loss amount agreed to by Defendant, it is expected that the Court will impose a restitution order of at least $900,000 against Defendant and payable to the crime victims. Defendant waived any defense or objection to any action to enforce the collection of the financial obligations to be imposed with this prosecution. (*See id.* at ¶ 24). Pursuant to Defendant's plea agreement, the United States requested and received the financial forms and information Defendant submitted to the United States Probation Office as part of the Pre-Sentence Investigation process. (*See id.* at ¶ 27). Despite being instructed by the Probation Office to list and describe any assets transferred since his arrest in December 2020, Defendant's submission failed to disclose two transfers totaling approximately $1,200,000 from PAG Group accounts to his wife that occurred on January 21 and 22, 2021. Defendant also failed to disclose the creation of a trust and associated bank accounts that Defendant used to conceal his finances for the benefit of his family. In a request to freeze the trust accounts to prevent further dissipation of the undisclosed assets, the government noted Defendant's failure to comply with the terms of his plea agreement regarding the disclosure of financial information to the United States.

After briefing and a hearing, the Court held that Defendant Kouletas breached the terms of his plea agreement and the terms of his pretrial release on bond. (Minutes of Proceeding, Dec. 22, 2022). The Court revoked Defendant's bond and Defendant self-surrendered on December 26, 2022. (*See id.*; Doc. 344 at ¶ 11, PageID 2445).

## II.      SENTENCING GUIDELINES CALCULATIONS

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guidelines range under 18 U.S.C. § 3553(a)(4). *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. *Id.* at 560-61. A court may find facts by a preponderance of the evidence when calculating the appropriate guidelines range. U*nited States v. Gates*, 461 F.3d 703, 707-08 (6th Cir. 2006). Once a court has determined the appropriate sentencing range, it should then consider that range in light of the other relevant § 3553(a) factors. *Thompson*, 515 F.3d at 561.

Kouletas pleaded guilty to one count of conspiracy to commit securities fraud. The Probation Office correctly started Kouletas' Guideline calculation at a base offense level of 7, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1.  (R. 344: Final PSR at ¶ 43, PageID 2455). An additional 14 levels were correctly added to the defendant's base offense level because the loss amount was between $550,000 and $1,500,000, pursuant to U.S.S.G § 2B1.1(c)(1)(G). *Id.* at ¶ 44, PageID 2455. The Probation Office also added two levels because Kouletas' offense involved more than 10 victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i). (*Id.* at ¶ 45, PageID 2455). According to the Parties and the Probation Office, the adjusted offense level after considering the applicable Chapter 2 provisions is correctly calculated as 23. Turning to Chapter 3 adjustments, the Probation Office correctly added 2 levels, pursuant to U.S.S.G. § 3C1.1, because Kouletas obstructed the administration of justice. (*Id.* at ¶ 48, PageID 2455). And

finally, after considering the provisions of U.S.S.G. § 3E1.1, the Probation Office did not further adjust Kouletas' offense level because Kouletas had not clearly demonstrated acceptance of responsibility based on his post-plea conduct, which resulted in the revocation of his bond. (*Id.* at ¶ 51, PageID 2456). Thus, Kouletas' total offense level was correctly calculated as 25.

After accounting for Kouletas' lack of criminal history, the Guidelines recommend a sentence between 57- and 71-months incarceration as the appropriate starting point in fashioning a sentence that is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a). However, as the offense of conviction carries a statutory maximum penalty of 60-months imprisonment, the Guidelines range is 57-60 months.

### A. The Obstruction of Justice Enhancement is Appropriate

Kouletas' failure to disclose both $1.2 million he transferred to his wife after being indicted, and his interest in the Apollo Family Trust, an entity he created to shield his assets because of this case, are each sufficient to justify and warrant the obstruction of justice enhancement. In his sentencing memorandum, Kouletas argues that the enhancement should not apply because he lacked the intent to obstruct and that the information regarding the trust has not been shown to be material. (R. 346: Kouletas Sent. Memo at PageID 2483-84). The arguments lack merit.

The Sixth Circuit has repeatedly upheld obstruction enhancements in cases where a defendant omits information on assets and income as part of the presentence investigation process. *United States v. Rathod*, 826 F. App'x 527, 536 (6th Cir. 2020); *United States v. Wilson*, 630 F. App'x 422, 430 (6th Cir. 2015) (affirming an obstruction enhancement because the defendants' omission of several assets "alone supports the obstruction of justice enhancement"); *United States v. Schneider*, 72 F. App'x 369, 371 (6th Cir. 2003) (concluding that obstruction enhancement was warranted because the defendant's "failure to accurately disclose his assets

4

interfered with the sentencing court's capacity to gauge his ability to pay restitution"). As part of the presentence investigation, probation officers are required to investigate and determine, as best as they can, a defendant's financial condition and ability to pay restitution, a potential Guideline fine, and court costs. As the Sixth Circuit held in *Rathod*, the materiality of a false statement regarding assets and income to a probation officer is evident when those statements affect the presentence investigation report. *Rathod*, 826 F. App'x at 536. Here, the financial summary in the First PSR does not contain any mention of the $1.2 million Kouletas transferred to his wife, the existence of the trust, or disclosure that Kouletas used the money to purchase a house as an investment property. (R. 333: First PSR at ¶ 80-83, Page ID 2350-51). It fails to include that information because Kouletas did not tell the probation officer about it as instructed on Probation Form 48B. Without that information, the Court would be left to decide aspects of Kouletas' sentence without the benefit of the truth. That Kouletas was, again, caught providing false information before he was sentenced does not mean that his failure to disclose pertinent and important financial information was not material.

Kouletas' intent for failing to disclose the money and the trust are evident in the context of the reason the trust was created in the first place. According to Kouletas' brief on the issue, "[a]fter Mr. Kouletas was arrested, he was concerned about the financial wherewithal of his family since as a condition of his bail he was no longer able to work in the securities industry." (R. 342: Defendant's Response to Motion to Restrain Assets, PageID 2394). While Kouletas blames another for coming up with the idea, in the end, Kouletas endeavored to "safeguard his assets" for "the benefit of his family," by putting his assets in a trust. (*Id.*). Put another way, Kouletas wanted to put his assets beyond the reach of the law so that he would not lose it to either the government or the victims in this case.

That this was all a misunderstanding or innocent is belied by how Kouletas described his post-bond violation employment before and after the government showed how he used the concealed money to buy and renovate a house. After he pleaded guilty, Kouletas was allowed to remain in the community, with additional restrictions, and work as the general contractor renovating what was described in the hearing as his brother's house across the street. We now know that house to be the property purchased and renovated, in part, with the PAG Group proceeds funneled from Defendant, through his wife, to the Apollo Family Trust. It was no accident that defendant did not tell the Court he was working on property he and his family members purchased during the pendency of the case. He intended to keep that important information to himself to do what he intended—safeguard his assets for the benefit of his family. After he was caught, he admits it was merely an investment intended to generate additional income that could be available for restitution and his family's use.

### B.  An Adjustment for Acceptance of Responsibility is Not Warranted

Defendant Kouletas is not entitled to an adjustment for acceptance of responsibility pursuant to U.S.S.G. 3E1.1. As noted by the Sixth Circuit, Application Note 4 to U.S.S.G. § 3E1.1 explains that "[c]onduct resulting in an enhancement under § 3C1.1 [for obstruction of justice] . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Rathod*, 826 F. App'x at 537. Only in extraordinary cases would adjustments under both chapters apply to the conduct of a defendant. U.S.S.G. § 3E1.1, n.4.

This is not an extraordinary case where both apply; and Kouletas does not advance an argument that it is. Defendant argues that his plea on August 30 was all that was required to earn acceptance of responsibility and erroneously cites *Schneider* to support the proposition that he should receive credit for acceptance of responsibility for pleading in a timely fashion, even if he obstructed justice. (*See* R. 346: Kouletas Sent. Memo, PageID 2482-83). The *Schneider* court

6

addressed the circumstances under which a defendant is entitled to the third-level for acceptance of responsibility pursuant to U.S.S.G. § 3B1.1(b), not whether the defendant was entitled to credit for acceptance of responsibility at all. 72 F. App'x at 372. While the opinion does not indicate the extraordinary reason that defendant was entitled to the two levels for acceptance of responsibility in the first place, the government did concede that the defendant was entitled to the additional third-level reduction. *Id*. That is not the case here. Instead, as in *Rathod*, a case with remarkably similar facts, Defendant's efforts to obstruct justice after entering his guilty plea demonstrate that he has not accepted responsibility. *Rathod*, 826 F. App'x at 537.

## III.   SECTION 3553(a) FACTORS

In this case, considering the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offenses and provide just punishment, and the need to afford adequate deterrence, the government respectfully recommends that the maximum sentence within the Guidelines is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

The Sixth Circuit Court of Appeals requires that a district court provide a reasonable explanation of its application of the sentencing factors set forth in Title 18, section 3553 of the United States Code in imposing sentence. In *Blackwell*, 459 F.3d at 773, the Sixth Circuit announced:

> The job of the district court is to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)." In reaching a sentence that complies with the purposes of § 3553(a), the district court must consider the Sentencing Guidelines range and all relevant § 3553 factors. While a district court need not explicitly reference § 3553 or recite a list of factors, it must provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review. . . . This Court will only uphold a sentence if it is reasonable. Reasonableness contains two facets: substantive and procedural. In reviewing for reasonableness, the Court employs a presumption for substantive reasonableness.

(Citations omitted.)  *Id.* The Sixth Circuit has stated that, "while a district court need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently detailed to reflect considerations listed in § 3553(a) and to allow for meaningful appellate review.'" *United States v. Tanner*, 382 F. App'x. 421, 423 (6th Cir. 2010) (*quoting United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) and *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)). Therefore, a district court must impose a reasonable sentence while expressing enough of its rationale to permit an appellate court to understand the basis for the sentence imposed.

A. **Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

Defendant Kouletas facilitated a fraud that cheated the victims out of over $900,000. He agreed to affirmatively deceive the public by making it appear that he was a bona-fide purchaser of GBEN stock who was simply selling stock when in truth he was taking a hefty fee from the proceeds for the trouble of selling manipulated stock. Kouletas commanded a hefty commission because, as he recognizes in his sentencing memorandum, there are "only a limited number of brokerage firms [that] provided for the sale of OTC stock that was purchased elsewhere . . . ." and Kouletas had the relationships in place to provide an unregulated outlet for the conspiracy to sell its stock. Kouletas is precisely the type of co-conspirator Collins and Thomas needed. He was someone with the right connections who would turn a blind-eye to what he knew was happening and help them to avoid the bottlenecks and gatekeepers built into the system by regulators to prevent harm to the public.

What is most troubling about Defendant's actions during the pendency of this case is that despite being indicted, arrested, and repeatedly ordered and reminded that he could not engage in stock transactions by judges in multiple districts and the government, Kouletas did it anyway. He brokered at least one stock sale and likely more considering the money deposited in his accounts

8

by confederates throughout the pendency of this case. Caught again, Defendant asked the Court for mercy and was allowed to stay on bond. Even deciding to admit his guilt in the offense did not convince Defendant to be truthful with the Court. Instead, he continued to conceal the money he transferred to his wife, concealed his interest in the trust, and carefully avoided telling the Court that his "employment" as a general contractor was on an investment property he and his family owned—effectively paying himself $1200 per month with his own money.

The Defendant may have otherwise led a law-abiding life, but in this case, Kouletas has repeatedly been untruthful and deceptive—only expressing remorse after being caught. His actions warrant a within-Guidelines sentence.

B. **Need of the Sentence to Reflect the Serious of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**

Imposing a sentence within the range suggested by the Guidelines would reflect the seriousness of Kouletas' offense, promote respect for the law, and provide just punishment. As demonstrated above, Kouletas' conduct post-indictment was egregious and demonstrates his lack of respect for the law. His continuous efforts to protect his own interests and wealth at the expense of the victims warrants substantial punishment. Only a significant sentence will promote proper respect for the law and provide just punishment for his crimes and post-indictment conduct.

C. **The Need of the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from further crimes of the Defendant**

Imposing a sentence within the Guidelines range would also deter others from exploiting the public to enrich themselves. *United States v. Flores-Machicote*, 706 F.3d 16, 22 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); *United States v. Miller*, 484 F.3d 964, 967-68 (8th Cir. 2007) ("general deterrence . . . is one of the key purposes of sentencing . . . ."); *United States v. Jackson*, 835 F.2d 1195, 1199 (7th Cir.

1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment . . . since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime 'market.'"). As courts have noted, deterrence is particularly important in "white-collar crimes, because they are often perceived as carrying substantially lesser punishment than other comparable offenses." *United States v. Panyard*, No. 07-20037-2, 2009 WL 1099257, at *12 (E.D. Mich. April 23, 2009).

Kouletas' offense was not an isolated incident. His scheme was rational, calculated and executed carefully to appear to comport with the law. The Sixth Circuit has acknowledged, ". . . economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). Fraudsters in the securities business apparently believe that not dealing directly with victims and reducing lies and misrepresentations to paper insulates them from serious sentences. A within Guidelines sentence would help dispel that notion and provide general deterrence to others.

## IV.    RESTITUTION

While it is no substitute for the harm Kouletas' indifference enabled his co-conspirators to inflict on the victims, restitution to the victims is directed by the Guidelines and mandated by law. U.S.S.G. § 5E1.1; 18 U.S.C. § 3663A. The Court should order Kouletas to pay a total of $902,564.57 in restitution, on a joint and several basis with his co-conspirators. The government also respectfully requests that the Court order the liquidation of the restrained Citibank N.A.

10

accounts at ending in x7367 and x7375 for deposit with the Clerk of Court and apply all funds to Defendant Kouletas' restitution obligation.

## V.    CONCLUSION

For the foregoing reasons, as well as those to be articulated at the sentencing hearing, the United States respectfully requests that this Court sentence Defendant Gary Kouletas to a term of imprisonment between 57 and 60 months for Count 1 and order him to pay the victims restitution for their losses.

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:   /s/ Alejandro A. Abreu
Alejandro A. Abreu (OH: 0089477)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3620
(216) 522-2403 (facsimile)
Alejandro.A.Abreu@usdoj.gov

11